UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
DAMIEN E. VELASQUEZ, and
KRISTI J. VELASQUEZ,

     Debtors.                    Case No. 13-10-15319 SA


DAMIEN E. VELASQUEZ, and
KRISTI J. VELASQUEZ,

     Plaintiffs,

v.                             Adversary No. 10-1184 S

PRESTIGE FINANCIAL SERVICES, INC., and
NEW MEXICO TAXATION AND REVENUE DEPARTMENT,

     Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTIONS FOR SUMMARY JUDGMENT


Damien and Kristi Velazquez ("Debtors" or "Plaintiffs")
filed their complaint seeking $3,360.12 currently held by the
State of New Mexico Corrections Department, naming as defendants
Prstige Financial Services, Inc. ("Prestige") and The State of
New Mexico Taxation and Revenue Department ("TRD").  Doc 1.  Both
Prestige and TRD have filed motions for summary judgment
("Motions"); TRD asserts the right to all the funds at issue
(docs 12 and 16) and Prestige now asserts the right to $1,505.60
of the funds ( docs 11 and 15).  For the reasons stated below,
the Court will deny both motions for summary judgment.[1]

_____

[1] The Court has subject matter and personal jurisdiction
pursuant to 28 U.S.C. §§1334 and 157(b); this is a core
proceeding pursuant to 28 U.S.C. §157(b)(2)((A), B),(E) and (K);

**BACKGROUND**[2]

On October 6, 2008 and October 8, 2009, TRD filed tax liens against debtors in Valencia County, New Mexico. TRD did not serve a warrant of levy against wages on Plaintiff Damien Valasquez's employer, the New Mexico State Corrections Department ("Corrections"). On December 15, 2009, Prestige obtained a judgment against Debtors in the Second Judicial District Court, County of Bernalillo, State of New Mexico ("State Court"). On April 20, 2010, Prestige obtained a writ of garnishment and served it upon Corrections. Corrections began to withhold wages, as directed, and did so until Plaintiffs filed bankruptcy on October 21, 2010. Pursuant to the garnishment, Corrections has withheld $3,360.12 from Debtor Damien Velasquez's wages.

**Summary Judgment Standard**

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.B.P. 7056, incorporating F.R.Civ.P. 56(a). The moving party must establish that there are no disputed material facts and that they are entitled to judgment as a matter of law. In order to defeat such a motion, nonmovant

---

and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

[2] There is an issue about the undisputed facts in connection with the Motions. Thus this background is merely a preliminary statement of the facts.

Case 10-01184-s    Doc 17    Filed 10/17/11    Entered 10/17/11 16:04:56 Page 2 of 24

must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(internal citations omitted). However, while the Court "need consider only the cited materials, ... it may consider other materials in the record." F.R.Civ.P. 56(c)(3).

New Mexico Local Bankruptcy Rule 7056-1 (2010) imposes additional requirements for memoranda supporting and opposing summary judgment:

> (b)  Undisputed Facts.  The memorandum in support of the motion shall set out as its opening a concise statement of all of the material facts as to which movant contends no genuine issue exists.  The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies.

> (c)  Disputed Facts.  A memorandum in opposition to the motion shall contain a concise statement of the material facts as to which the party contends a genuine issue does exist.  Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the movant's fact that is disputed.  All material facts set forth in movant's statement that are properly supported shall be deemed admitted unless specifically controverted.

TRD has complied with the local rule; Prestige and Debtors have not.  The Court therefore accepts as true the facts proposed by TRD, as far as they go, and moves on to the issue of whether either movant is entitled to judgment as a matter of law.

The facts established by TRD in its memorandum (doc 12) are

3

as follows:

1. Plaintiffs Damien E. Velasquez and Kristi J. Velasquez filed a petition for relief under chapter 13 of the United States Bankruptcy Code on October 21, 2010. <u>See</u>, Petition, Dkt. 1, Case No. 13-10-15319 SA.

2. The Plaintiffs' chapter 13 case in pending in the United States Bankruptcy Court, District of New Mexico, as case no. 13-10-15319. <u>Id</u>.

3. The Plaintiffs reside at 11 Silvana Ct., Peralta, Valencia County, New Mexico 87042. <u>Id</u>.

4. Plaintiff Damien E. Velasquez is employed as a corrections officer by the Corrections Department of the State of New Mexico, and has been so employed for the past ten years. <u>See</u>, Schedule I, Dkt. No. 1, Case No. 13-10-15319 SA.

5. The Corrections Department is a department of the State of New Mexico, <u>See</u>, the Corrections Department Act, §9-3-1, <u>et seq</u>., NMSA 1978.

6. The Department is a department of the State of New Mexico. <u>See</u>, the Taxation and Revenue Department Act, §9-11-1, <u>et seq</u>., NMSA 1978

7. Plaintiffs are indebted to the Department, in the amount of $7,790.85, for unpaid pre-petition New Mexico Personal Income Taxes, <u>See</u>, the Department's Amended Proof of Claim No. 1, filed December 21, 2010 in Case No. 13-10-15319.

4

8. A portion of the debt owed by the Plaintiffs to the Department is secured by tax liens perfected against third parties by the recording of notices of tax liens filed in Valencia County, New Mexico: Lien No. 219582, recorded October 8, 2009 at Book 363, Page 13092, in the amount of $329.91; and Lien No. 241130, recorded October 6, 2003, at Book 362, Page 14353, in the amount of $2,047.13. Id.

9. On July 28, 2009, Prestige Financial Service, Inc. ("Prestige") filed against Plaintiffs, in the Second Judicial District, Bernalillo County, New Mexico, as Case No. D-202-CV-20098850, a Complaint for Collection of Money Due. See Case Detail, attached as Exhibit A.

10. Prestige was awarded judgment by default on December 15, 2009. Id.

11. On April 20, 2010, Prestige applied for, and was issued a Writ of Garnishment which it subsequently served on the Corrections Department. Id.

12. The Corrections Department filed an answer to the Writ of Garnishment on June 1, 2010. Id.

13. Also on June 1, 2010, Plaintiffs filed an answer to the State Court complaint, and moved to set aside the default judgment and garnishment. Id.

14. The matter was not resolved in State Court prior to the filing of the Plaintiffs' chapter 13 case. No judgment on the

5

writ of garnishment was entered.  <u>Id</u>.

15. From the wages paid by the Corrections Department to Plaintiff Damien Velasquez, the State of New Mexico has withheld, and is in possession of, the sum of $3,360.12, pursuant to the Writ of Garnishment. <u>See</u>, Complaint, Paragraph 7, Answer of Prestige, Paragraph 1.

**ANALYSIS**

To start with, clarifying the parties' procedural positions would be useful.  Plaintiffs' Complaint to Secure Order Releasing Garnished Funds held by State of New Mexico is clear about what it wants – the $3.360.12 – but cites no statute or other authority for the relief sought.  The parties at various places argue or suggest issues touching on the automatic stay (§362), claims objections (§502), exemptions (§522), turnover (§542), the trustee as a strong-arm creditor (§544), preferential transfer (§547) and setoff (§553).[3]  Nor have Plaintiffs filed their own motion for summary judgment, although they have responded to the motions filed by TRD and Prestige.  In consequence, the Court is not in a position to award judgment to Plaintiffs.

TRD asserts that it has an ownership claim to all the funds at issue that is superior to that of Prestige and asks the Court to modify the stay to permit it to set off its claim to those

---

[3] For that reason the Court cited several subsections of 28 U.S.C. §157(b) concerning core proceedings.

6

funds against what it is owed by Debtors.

Prestige candidly recognizes that the withholdings that took place in the ninety days immediately prior to the filing of the petition pursuant to the writ of garnishment presumably constitute preferential transfers[4] and thus seeks only the pre-90 day sums, totaling $1,505.60. And it argues that the stay need not be modified to permit the State Court to enter the judgment requiring Corrections to deliver the $1,505.60 to it.

**TRD's Setoff Claims**

In its motion, TRD seeks to establish that it is entitled to the entire $3,360.12 and asks the Court to modify the stay to permit TRD to set off that sum against the $7,790.85 that Debtors owe TRD for unpaid prepetition New Mexico personal income taxes. It basically argues two positions. First, it argues that because Debtors owed TRD $7,790.85 at the same time that Corrections owed Debtors the amount in issue, a simple application of the setoff principle permitted by §553 entitles TRD to the $3,360.12. And it argues that as a garnishor, Prestige is entitled only to what Debtors had coming to them subject to any liens or possessory rights of the State, and that on that basis there was nothing for the Debtors and thus nothing for Prestige.

---

[4] But, as the Court has noted, Debtors have not specifically asserted a preferential transfer claim, and thus have not addressed the requirements of §547(b)(5) in the context of a priority tax claim being paid by an offset.

7

Second, TRD also has two prepetition tax liens, recorded in Valencia County, New Mexico (the county in which Debtors reside), which TRD also asserts are a basis for collection of at least a portion of the funds at issue.  The two tax liens total $2,377.04.

Prestige and Debtors argue otherwise.

**Availability of Setoff Under Unitary Theory**

11 U.S.C. § 553(a) provides, in part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...

This section does not create a federal right of setoff.  Strumpf, 516 U.S. at 18.  It does provide, however, that with certain exceptions whatever right of setoff otherwise exists is preserved in bankruptcy.  Id.

> If a prepetition right to setoff exists under nonbankruptcy law, § 553(a) only authorizes a creditor to setoff "valid and enforceable" prepetition debts owed by it to the debtor against "valid and enforceable" prepetition claims owed by the debtor to the creditor. Conoco, Inc. v. Styler(In re Peterson Distrib., Inc.), 82 F.3d 956, 959 & 963 (10th Cir. 1996) ... The debts and claims in question must be "mutual", i.e., "between the same parties standing in the same capacity." Davidovichv. Welton (In re Davidovich), 901 F.2d 1533, 1537 (10th Cir. 1990)(per curiam.)

Farmers Home Administration v. Buckner (In re Buckner), 218

8

B.R. 137, 145 (10th Cir. B.A.P. 1998).

TRD correctly argues that even though Corrections and TRD are different departments, they are both constituent parts of the State of New Mexico, which is a unitary creditor in bankruptcy. Art III, Section 1, N.M. Const.; Wyoming DOT v. Straight (In re Straight), 143 F.3d 1387 (10th Cir. 1998); see also Turner v. Small Bus. Admin., 84 F.3d 1294,1298-99 (10th Cir. 1996) (United States is unitary creditor for purposes of §553 setoff).

Based on this status, TRD then argues that it should be able to setoff the garnished funds held by Corrections against Plaintiffs' debt to TRD. See Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995) (quoting Studley v. Boylston Natl. Bank, 229 U.S. 523, 528 (1913):

> The common law has long recognized the right of setoff:
> The right of setoff (also called "offset") allows
> entities that owe each other money to apply their
> mutual debts against each other, thereby avoiding the
> "absurdity of making A pay B when B owes A."

Id. at 18.

Prestige objects to TRD's proposed setoff on the grounds that the debts are not mutual as between the State of New Mexico and Debtors, since wages were withheld by the State in its capacity as garnishee, and owed to the State in its capacity as a taxing authority .  It is settled law that a unitary creditor like the State of New Mexico or the United States may setoff interagency debts against each other, even when those debts

9

otherwise have no relation to each other.  In re Turner, 84 F.3d at 1296 (citing Cherry Cotton Mills v. United States, 327 U.S. 536 (1946)).  But in the cases which have been brought to the Court's attention, the state, or the United States, has been in each case the debtor and the creditor.  In the current situation, however, as set out in the undisputed facts, Corrections is a garnishee rather than the debtor to the Debtors.  It is merely holding funds which, at that stage in the State Court proceedings when Debtors filed their chapter 7 petition, it would be directed to deliver to Prestige or Debtors.  It had made no claim to the funds for the State.  Nor had TRD sought to intervene in the State Court action, as permitted by §35-12-5, to asserts the State's right to keep the funds to pay taxes.[5]  So Corrections does not hold property which it owes to Debtors so much as it is merely a stakeholder for two other sides; to wit, Prestige and Debtors.

TRD argues that because of confidentiality rules, see §7-1-8 NMSA 1978 (Confidentiality of Returns and Other Information), Corrections would not have known about the debt to TRD and so would not be expected to have answered the writ of garnishment by stating that the State had a claim to the funds.  There are

_____

[5] Of course, under a unitary theory, it would be odd for TRD to intervene when Corrections was already the garnishee.  But what that fact demonstrates is that no one representing the State told the State Court or Prestige that the State had a claim to the funds.

10

several responses to this argument.

First, this assertion would appear to be the sort of fact that, for purposes of summary judgment, would need to be in the uncontested material facts section of the memorandum. In this instance, the statement is simply part of TRD's argument. Second, §7-1-8.4 NMSA 1978 appears to provide an exception to the non-disclosure requirements dictated by §7-1-8. Section 7-1-8.4 provides in relevant part as follows:

> **Information that may be revealed to judicial bodies or with respect to judicial proceedings or investigations.**
> An employee of the department may reveal to:
> A.   A district court ... a return or return information:
>     ...
>     (2)   in an action in which the department is attempting to ... collect a tax;...

Third, in any event, there were already two tax liens that had been recorded in Valencia County, so there was no question of confidentiality. The Court is sympathetic to the State's apparent difficulties in having the many departments of the sprawling executive apparatus communicate and coordinate with each other, but that is a consequence of the theory of the State as a unitary creditor, and the State Court and Prestige should not have to suffer as a result.[6]

---

[6] TRD also points out that no judgment has yet been entered in the State Court action, and therefore the State (Corrections) still has the option of amending its answer to assert the State's claim to the funds. However, the Court takes the facts of the adversary proceeding as set out in the uncontested material facts and as they existed on the date of the filing of the petition.

11

In <u>Seattle-First National Bank v. Drum Corps Association of
Spokane (In re Drum Corps Association of Spokane)</u>, 22 B.R. 929
(Bankr. E.D.Wash. 1982), plaintiff bank answered a writ of
garnishment but failed to claim an interest in the garnished
funds.  That failure resulted in the bank losing its right to
assert an offset because it was no longer holding the funds in
the capacity of an owner of the funds.  <u>Id.</u> at 933.  In
consequence the trustee obtained a turnover of the funds.  <u>Id.</u>
The similarity of the facts makes the case a useful precedent for
this one.

However, as noted above, the actual answer filed by
Corrections in the State Court action is not in the record, and
therefore the Court cannot at this time rule on the issue of
whether the State in effect waived its senior lien position.

**Scope of Tax Lien**

Prestige argues that TRD's lien is not valid because it
"does not extend to wages of the taxpayer."  As TRD points out,
§7-1-37(A) NMSA 1978 states that "the amount of the tax shall be
a lien in favor of the state upon all property and rights to
property of the [debtor]."  "Property and rights to property" are
broadly defined as "any tangible property, real or personal, or
any intangible property of a taxpayer." §7-1-3(Q) NMSA 1978.
Thus, if wages are property of any kind, they are encumbered by
the tax lien. §7-1-36 NMSA 1978 creates a limit on the amount of

12

money that the state may levy from wages in a given pay period. When §7-1-3(G) is read together with §7-1-36, the only reasonable understanding of the statute is that "property and rights to property" includes wages.  Prestige's reading is therefore incorrect, and a tax lien does, in fact, encumber wages.

However, §7-1-37(C) also provides in part that

> [a]s against any ... judgment creditor ..., the lien imposed by Subsection A of this section shall not be considered to have arisen or have any effect whatever until notice of the lien has been filed as provided in Section 7-1-38 NMSA 1978.

The two liens of October 8, 2009 and October 6, 2008 were in place prior to April 20, 2010, when Prestige applied for and was issued the writ of garnishment under which it now claims.  Thus it may be that, depending on what answer is or has been filed to the writ of garnishment, TRD may have a superior claim to the garnished wages in an amount equal to the amount of its recorded notices of liens.

**Necessity of a Warrant of Levy**

Prestige further appears to argue that TRD is not secured because it did not serve a warrant of levy on Corrections.  It asserts that § 7-1-31 NMSA 1978 requires TRD to have issued a warrant of levy for its lien to be valid.  This is not the case. § 7-1-31 NMSA 1978 specifically sets out the procedure, including warrant of levy, for seizure of property by levy.  Id.  But this is not the theory under which TRD is asking to recover the

13

garnished funds.  TRD is claiming the garnished funds based on an offset, not a levy.

Moreover, a warrant of levy has nothing to do with the validity of a lien.  §7-1-37(C) explains:

> [a]s against any...judgment creditor...the [tax lien]
> shall not be considered to have arisen or have any
> effect whatever until notice of the lien has been filed
> as provided in Section 7-1-38 NMSA 1978.

Rather, a warrant of levy provides the authority to take possession of the property.  §7-1-31(B).  TRD therefore perfected its liens by filing the notices of lien on October 8, 2009 and October 6, 2009, for the amounts contained in those notices.[7]

**Preservation of Setoff in Bankruptcy**

Plaintiffs claim that TRD has given up whatever right to setoff it may have had by failing to pursue it prior to Plaintiffs' bankruptcy filing.  This is incorrect.  The Bankruptcy Code, 11 U.S.C. § 553(a) provides that "whatever right of setoff otherwise exists is preserved in bankruptcy." Strumpf, 516 U.S. at 20; 11 U.S.C. § 553(a).  Certainly, the automatic stay does limit the exercise of a right of setoff.  Id.; §362(a)(7).  However, TRD is not attempting to effect the setoff while the automatic stay is still applicable.  Rather, it asks the Court to modify the stay to allow it to do so.

---

[7] If one subtracts the presumably preferential transfers, and subject of course to a ruling that TRD may assert a claim to the funds, this may have the effect of eliminating any value for Prestige.

14

This explanation also addresses Prestige's assertion that TRD's setoff is not valid because TRD did not take the proper steps to effect it. That assertion reveals a fundamental misunderstanding by Prestige of the relief requested by TRD. TRD is requesting that the court determine, first, that its interest in the garnished funds is superior to both Plaintiffs' and Prestige's, and second, that the automatic stay be modified so that TRD can effect the setoff.

**Control of the Funds**

Part of the objection raised by Prestige is that the debts are not mutual as between the State of New Mexico and Debtors, since the withheld wages belong to and are in the "control" of Prestige, not Debtors. Prestige cites § 55-9-104(a)(2) NMSA 1978, which explains the circumstances under which a secured creditor may be said to have "control" of a deposit account under the Uniform Commerical Code ("UCC"). That section reads as follows:

> (a) A secured party has control of a deposit account if:...(2) the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor...

§ 55-9-104(a)(2) NMSA 1978. There are problems with this line of reasoning. First, this section contemplates only deposit accounts held by banks. This is not a deposit account, these are withheld wages. The cited section is therefore entirely

15

inapplicable to this situation.  Second, these funds are held by the State of New Mexico, rather than a bank[8].  Therefore there is no "bank" which may make the agreement provided for by the UCC, so even if it were applicable, Prestige could not establish "control" under this section.

## **Effect of Writ of Garnishment**

Prestige and TRD agree on at least one fundamental of the problem; namely, that "judgment creditor acting under a writ of garnishment . . . can only seize the property that belongs to the judgment debtor."  Jemko, Inc. v. Liaghat, 106 N.M. 50, 51, 738 P.2d 922, 924 (Ct. App. 1987).

> The purpose of the garnishment proceeding is to subrogate the plaintiff to defendant's rights against the garnishee. See Hamilton v. Hanks, 309 So.2d 229 (Fla.App.1975). The test as to whether funds in the hands of another are subject to garnishment is whether the defendant in the original action could recover such funds directly against the garnishee. See Morgan v. Morgan, 156 Ga.App. 726, 275 S.E.2d 673 (1980); see also Field v. Sammis, 12 N.M. 36, 73 P. 617 (1903); Grimm v. Sinnett, 567 S.W.2d 418 (Mo.App.1978).

Id., 106 N.M. at 53-54, 738 P.2d at 926-27.

On the other hand, whether a lien is created merely by the service of the writ, or only by a judgment in the garnishment proceeding as TRD contends, is not clear.  The wording of §35-12-

---

[8] TRD notes that "the funds are being held in at least quasi custodia legis," by the Second Judicial District Court." Doc 12, p. 5.  TRD does not expound on the consequences of this statement, whatever its accuracy.  In any event, using the garnishment statutes and the doctrine of setoff provide sufficient tools to analyze the problem.

16

4(D)[9], dealing with garnished wages, and §35-12-6[10], dealing with
the garnishment of unmatured debts (similar in form to wages that
are earned and paid over time), suggests that a lien might only
arise under New Mexico law when the appropriate judgment is
entered.  On the other hand, the instructions in the writ of
garnishment, the form of which is set out in §35-12-18[11],

---

[9] That subsection provides as follows:
D. If the defendant is employed by the garnishee, the
magistrate shall render judgment for the plaintiff
against the garnishee for the unpaid balance of the
plaintiff's judgment against the defendant and order
the garnishee to pay to the plaintiff each pay period
the defendant's wages or salary, which are not exempt
from garnishment under Section 35-12-7 NMSA 1978 and
which come due subsequent to the time of answer, until
the judgment is satisfied, or, if the employment
relationship is terminated, until the garnishee gives
the plaintiff written notice that the employment
relationship has terminated.

[10] That section provides as follows:
Debts not yet due to the defendant may be garnished,
but no execution shall be awarded against the garnishee
for such debts until they become due. The magistrate
may order the defendant to deliver the evidence of such
indebtedness to the court. If the defendant alleges an
endorsement or delivery of the evidence before the
court's order came to his knowledge, the court may
inquire into the consideration and good faith of the
transfer and, if the court determines that the endorsee
or transferee holds by fraudulent endorsement or
delivery, it may order delivery of the evidence to the
court. When any evidence of indebtedness is delivered
to the court under this section, the court shall notify
any endorsers of its nonpayment at maturity, and the
garnishment proceedings shall remain open until it
becomes due.

[11] That statute provides as follows:

**Garnishment; form of writ**

17

Writs of garnishment in civil actions in the magistrate court shall state whether the writ is issued in advance of or in aid of execution of judgment and shall be in substantially the following form:

"STATE OF NEW MEXICO
.......... MAGISTRATE DISTRICT, DIVISION ..........

(Name), Plaintiff
v.

(Name), Defendant

CIVIL DOCKET NO. ..........
(Name), Garnishee

WRIT OF GARNISHMENT

THE STATE OF NEW MEXICO to the above-named garnishee:

You are ordered to appear before the magistrate court located at .......... within twenty days from the service of this writ upon you to answer under oath the following questions, as of the date of service and as of the date of your answer:

1. What, if anything, are you indebted to the defendant in this action and on what account?

2. What, if any, personal property of the defendant is in your possession or under your control?

3. What other persons, if any, within your knowledge are indebted to the defendant or have personal property of the defendant in their possession?

Service of this writ upon you has the effect of attaching all personal property, money, rights, credits, bonds, bills, notes, drafts and other choses in action of the defendant in your possession or under your control at the time of service and which may come into your possession or under your control or be owing by you between the time of service and the time of making your answer.

This writ was issued in (advance) (aid of execution) of judgment against the defendant. If this writ was issued in advance of judgment, it does not attach any wages or salary due from you to

18

make clear that the garnishee is not to dispose of the property
that has been "attached"; these are instructions in the writ
itself, prior to the award of any judgment.  And §35-12-9
explicitly provides as follows:

> Garnishment; wages and salary; lien; priority
> A. A judgment entered against a garnishee under Section
> 35-12-4D NMSA 1978 is a lien on the defendant's wages
> or salary, which are not exempt from garnishment under

the defendant. If this writ was issued in aid of execution of
judgment, it attaches wages or salary due from you to the
defendant in excess of the greater of the following portions of
the defendant's disposable earnings:

A. seventy-five percent of the defendant's disposable earnings
for any pay period; or

B. an amount each week equal to forty times the federal minimum
hourly wage rate. A table giving equivalent exemptions for pay
periods of other than one week may be obtained from the
commissioner of banking. "Disposable earnings" means that part of
the defendant's wage or salary remaining after deducting the
amounts which are required by law to be withheld. "Federal
minimum hourly wage rate" means the highest federal minimum
hourly wage rate for an eight-hour day or a forty-hour week. It
is immaterial whether you are exempt under federal law from
paying the federal minimum hourly wage rate.

It is unlawful to pay or deliver to the defendant any item
attached by this writ. If you fail to appear and answer as
directed, or if you unlawfully dispose of any item attached by
this writ, judgment may be rendered against you for the full
amount of the plaintiff's claim against the defendant in this
action.

Dated ......, 19...

Magistrate"

Section 35-12-19 provides that if the garnishment is taking
place in district court, then the district court clerk issues the
writ.

19

Section 35-12-7 NMSA 1978 [specifying what wages are
exempt and what are not] and which come due subsequent
to the time of answer, until the judgment against the
garnishee is paid or until the employment relationship
is terminated.
B. If the defendant's wages or salary are subject to
more than one judgment lien, the liens shall be
satisfied in the order in which the garnishment is
served on the garnishee.

In <u>Becker v. Am. Bank of Commerce (In re Town & Country Color</u>
<u>Television, Inc.</u>, 22 B.R. 421 (Bankr. D.N.M. 1982), the Court
ruled that service of a writ of garnishment creates a lien on the
property it attaches. <u>Id.</u> at 423, citing <u>In re Woodman</u>, 8 B.R.
686, 687 (Bankr. W.D.Wis. 1981). <u>Becker</u> involved a bank account,
but <u>Woodman</u> dealt with garnished wages. And <u>see</u> <u>Behles v. H.O.</u>
<u>Ellermeyer (In re Lucas)</u>, 107 B.R. 332, 335 (Bankr. D.N.M. 1989):
"[T]he New Mexico statutes state that a writ of garnishment
attaches the property upon service[12] of the writ...." <u>Lucas</u>
specifically asked the question of whether the entry of a
judgment was necessary to perfect the lien effected by the writ
of garnishment. <u>Id.</u> at 335.[13] It concluded that it was not.
Thus, it becomes irrelevant that neither creditor had obtained a
judgment on the writ of garnishment.

_____

[12] The pleadings are not clear as to the precise date of
service. However, service had to have occurred after the
issuance of the writ on April 20, 2010 and before Corrections'
answer to the writ on June 1, 2010 (doc 12, p. 3). This factual
gap does not affect the Court's analysis.

[13] And appropriately so; the garnishment statutes are
anything but clear on this issue.

On the other hand, the lien cannot attach to wages until debtor has earned them, since debtor does not yet have any interest in wages to attach until they are earned. This Court stated in Chavez v. Mercury Finance (In re Chavez), 257 B.R. 341 (Bankr. D.N.M. 2001):

> In Bankruptcy Court, in the absence of any controlling federal law, property and interests in property are matters of state law. One exception to this application of state property law is the Supreme Court's rule that wages only become property when earned.

Id. at 343 (citations omitted). In Local Loan Co. v. Hunt, 292 U.S. 234 (1934), the Supreme Court stated:

> The earning power of an individual is the power to create property; but it is not translated into property within the meaning of the Bankruptcy Act until it has brought earnings into existence.

Id. at 243. The court rejected the contention that an assignment of future wages constitutes a lien (even if perfected) that survives the bankruptcy process. Id. at 243-44.

Further, "[w]hat constitutes a 'transfer' of property and when a transfer is complete is also a matter of federal law." Chavez, 257 B.R. at 343 (in the context of a preferential transfer action) (citation omitted). Section 547(e)(3) provides that a transfer is not made until the debtor acquires rights in the property being transferred. But once the property comes into existence, then under the garnishment statute it is effectively transferred from debtor to the garnishee or garnishor (assuming a writ of garnishment is in effect).

21

**Validity and Priority of Prestige's Security Interest**

The Court has already stated that the fact that Prestige had not obtained a final judgment prior to the bankruptcy filing does not mean it did not have a lien. And in any event, the withholding of the wages each time constituted at that instant a transfer of the withheld amounts to a creditor. In re Chavez, 257 B.R. at 343, quoting Taylor v. Mississippi Learning Institute (In re Taylor), 151 B.R. 772, 778 (Bankr. N.D.Miss. 1993). And it appears likely that Prestige will be able to argue that the State waived the priority of its lien position with respect to the garnished payments, including addressing the recorded tax liens. However, given that Corrections's answer to the writ of garnishment is not in the record (although it appears that even TRD concedes that Corrections did not raise the State's claim in the answer) and that the factual effect of that answer is not undisputed, the Court cannot grant summary judgment to Prestige either. The Court considers that the mere recitation of the filing of the answer and the parties' discussion of the answer leaves too material of a factual dispute to overlook.

**Debtors' Entitlement to the Garnished Wages**

Citing no authority, statutory or otherwise, Debtors claim entitlement to the entire $3,360.12 of withheld wages (doc 14, p. 4). Shortly after the commencement of the case, Debtors filed an Amended Scheduled C including the withheld funds, and noticed it

22

out (Main case, doc 36). No objections were filed, therefore these funds are exempt. See Debtor's Amended Schedule B, listing garnished wages as exempt (Main case, doc 13, p. 2). Debtor's Amended Statement of Financial Affairs also lists the garnished wages (Main case, doc 17, p. 3).

It certainly appears possible, therefore, that Debtors may assert that they are entitled to all the funds at issue, and that they may make that claim by first, filing an amended complaint that asserts a cause of action and cites a statute in support thereof, and second, by filing a motion for summary judgment or obtaining a trial setting.

**CONCLUSION**

For the foregoing reasons, the motions for summary judgment by Prestige and TRD should be denied without prejudice. The Court finds that TRD does not, at least yet, have a right to offset the garnished funds. The Court also finds that Prestige has not sufficiently documented or established the seniority of its claim to any of the garnished funds.

**ORDER**

For the foregoing reasons,

IT IS HEREBY ORDERED that Prestige Financial Services, Inc.'s Motion & Memorandum for Summary Judgment (doc 11) and Taxation and Revenue Department's Motion for Summary Judgment on

Counter Claim and Cross Claim (doc 12) are denied without

prejudice.

_____
James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:   October 17, 2011

COPY TO:

Steven J Clark
PO Box 1108
Peralta, NM 87042-1108

T Kyle Campbell, III
PO Box 37229
Albuquerque, NM 87176-7229

James C Jacobsen
111 Lomas NW Ste 300
Albuquerque, NM 87102-2368